[Civ. No. 6782. Second Appellate District, Division Two.—June 1, 1931.]

WALTER G. MATHEWSON, as Chief of the Division of Labor Statistics, etc., Appellant, v. J. H. BEAN et al., Respondents.

U. S. Webb, Attorney-General, L. G. Campbell, Deputy Attorney-General, and Charles F. Lowy for Appellant.

Schweitzer & Hutton and H. F. Clary for Respondents.

WORKS, P. J.—The complaint in this action, consisting of but one count, alleges the official capacity of plaintiff as Chief of the Division of Labor Statistics in one of the governmental departments of the state; that defendant Bean was at a certain election a candidate for county supervisor; that defendant Frazer was an organizer of election campaigns; that Bean and Frazer employed one Leon M. Aldrich and sixty-six other persons to assist in Bean's campaign and to perform certain special services in connection therewith, each of said sixty-seven persons at a compensation of a certain amount, and that there is due to them all the lump sum of $4,301.66, although a list at the end of the pleading shows the amount due to each of these persons, the largest of these specific sums being $500 and the smallest fifteen dollars; that none of the sixty-seven persons is financially able to employ counsel and that each has assigned his claim to plaintiff for the purpose of collection, pursuant to a duty incumbent upon plaintiff under the law; that demand has been made upon defendants for the payment of the "sums" mentioned in the list, but that payment has been refused. The prayer of the complaint is for the lump sum of $4,301.66.

A demurrer was interposed to the complaint, upon both general and special grounds. The demurrer was sustained without leave to amend and judgment accordingly went for defendants. Plaintiff appeals.

In disposing of the cause we shall consider only the question whether the complaint states a cause of action. The salary of the office to which Bean aspired was the sum of $5,000 a year and the term was four years. Section 3 of the so-called Purity of Elections Law (Act 2262, Deering's Gen. Laws 1923, p. 837; Stats. 1907, p. 671, as amended),

which counsel concede applies to the election at which Bean stood as a candidate, provides in part that for the purposes for which the sixty-seven were employed ''no sum of money shall be paid and no expense shall be incurred directly or indirectly or on behalf of a candidate, whether before, during, or after an election . . . at which he is a candidate, in excess of a maximum amount following, that is to say: if the term of the office for which the person is a candidate be . . . for more than three years, and not more than four years, twenty per centum of the amount of one year's salary of the office . . . ''

It is contended by appellant that this language imports only an inhibition against Bean paying more than $1,000 to any one person, and that as each of the sixty-seven claims is less than that amount, Bean could lawfully pay and can by the courts be compelled to pay the entire amount for which judgment is demanded, although that sum nearly equals his prospective salary for an entire year. But the purpose of the Purity of Elections Law is to prevent corruption and improper practices in the conduct of elections. That purpose can be subserved only by regarding the total amount paid to all persons employed by a candidate and not that paid to any single individual, or to any imaginable number of individuals, each one of whom has earned no more than $1,000. To construe the law as appellant demands would be to reduce it to the veriest absurdity. If the absurdity is not sufficiently apparent from the facts of the present controversy, let us imagine a situation to which the logic of appellant's contention must inevitably lead. Suppose that all but one of the sixty-seven each had a claim of $1,000 against respondents, instead of the smaller amount set opposite his name in the complaint. Suppose the excepted one had a claim of $1,025. Respondents, under appellant's contention, not only could pay but would be required by the courts to pay $66,000 in the aggregate to the sixty-six. The stream of political management would then remain limpid and pure. If, however, respondents paid $1,025 to the sixty-seventh, the stream would become one of rottenness and corruption, and this change from purity to impurity would be effected by the payment of the sum of twenty-five dollars and not of the $1,000 which went with it. This sort of situation reminds one of the inebriate

celebrated by Eugene Field in one of his poems, who, reflecting in the morning upon his carousal of the night before, laid his matutinal distress

> "Not to the large cold bottle,
> But to the small hot bird."

Surely, the legislature never attempted to purify politics by such lame and ineffectual methods. The Purity of Elections Law, taken altogether, admits of no such construction.

The act provides, under appropriate penalty, that respondents cannot voluntarily pay the claim sued on in the complaint. We are unable to perceive how a court can compel respondents to commit the offense denounced by the law.

It is to be observed that under the complaint there is no room for a segregation of the sixty-seven so that appellant might have judgment upon the claims of some and not upon those of others. They are all placed in the same position. Especially, there is no allegation which would authorize a judgment on behalf of some because of priority in employment over the others, granting for the sake of argument, but not deciding, that under appropriate allegations a priority might be availed of. The complaint stands as if the sixty-seven were employed in a lot and at the same time and place.

Judgment affirmed.

Craig, J., and Thompson (Ira F.), J., concurred.